## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JEFFERY L. HACKLE,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-145
Beckwith, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for supplemental security income (SSI). This matter is before the Court on plaintiff's statement

of errors (Doc. 11) and the Commissioner's memorandum in opposition (Doc. 14).

### I. Procedural Background

Plaintiff filed an application for SSI in December 2006, alleging disability since April 1,

1999, due to a spinal injury, shoulder and pectoral sprain/strain, lung nodule, pain, anxiety,

depression, and limited attention span. (Tr. 84, 245). Plaintiff's application was denied initially

and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo

hearing before Administrative Law Judge (ALJ) Samuel A. Rodner. Plaintiff and a vocational

expert (VE) appeared and testified at the ALJ hearing. On February 17, 2010, the ALJ issued a

decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals

Council was denied, making the decision of the ALJ the final administrative decision of the

Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2

2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since December 1, 2006, the application date (20 CFR 416.971 *et seq.*).

> 2. The [plaintiff] has the following severe impairments: low back pain, depression, attention deficit hyperactivity disorder, and polysubstance abuse and dependence (20 CFR 416.920(c)).

> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

> 4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with the following limitations: he can lift up to 50 pounds occasionally and 25 pounds frequently, and he can stand and/or walk and sit for a total of 6 hours in an 8-hour workday.  He can never climb ladders, ropes, or scaffolds, and he can occasionally stoop. Mentally, he can perform simple, routine, and repetitive tasks.  He has some difficulty relating to others and cannot have public interaction or superficial interaction with co-workers and supervisors.  He is not able to tolerate a stressful job and should avoid a constantly rapid pace.

> 5. The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).

6.  The [plaintiff] was born [in] . . . 1961 and was 45 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.  The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue in this case because the [plaintiff's] past relevant work is unskilled (20 CFR 416.968).

9.  Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since December 1, 2006, the date the application was filed (20 CFR 416.920(g)).

(Tr. 12-22).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).  *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.  Specific Errors**

The pertinent medical findings and opinions have been adequately summarized by the ALJ and the Commissioner and will not be repeated here.  (Tr. 12-20; Doc. 14 at 2-7)[1].  Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns three errors in this case:  (1) the factual and legal bases for the RFC finding are not set forth with "such clarity as to be understandable" as required by *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947), and the finding does not meet the narrative discussion requirement of Social Security Ruling 96-8p[2]; (2) the ALJ improperly weighed the medical opinions of record by assigning greater weight to the opinions of the non-examining state agency

---

[1]Plaintiff did not submit a summary of the medical evidence in his brief.

[2]Social Security Ruling 96-8p provides in relevant part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

5

physicians and psychologists than to plaintiff's treating and examining physicians and

psychologists; and (3) the ALJ's credibility analysis is unsupported by substantial evidence.

(Doc. 11 at 2).

### 1. The clarity of the ALJ's RFC decision.

Plaintiff's first assignment of error asserts the ALJ's RFC determination lacks sufficient

specificity and violates the principle enunciated in *SEC v. Chenery Corp.*, 318 U.S. 80, 94

(1943), which requires administrative determinations to clearly disclose the grounds upon which

the decision is based.  Plaintiff also cites to *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir.

2010), in which the Seventh Circuit held that boilerplate language, similar to that used by ALJ

Rodner in determining plaintiff's RFC in this case (*see* Tr. 15-16), was not sufficiently detailed

to provide the reviewing court with the evidentiary basis for the RFC determination.  In support

of this assignment of error, plaintiff discusses the ALJ's assessment of the alleged

inconsistencies in plaintiff's testimony and functional reports; the ALJ's assessment of the

objective medical evidence in relation to plaintiff's credibility; and the ALJ's weighing of the

medical opinions.  (Doc. 11 at 8-15).  Rather than addressing the alleged lack of clarity of the

ALJ's decision, plaintiff's arguments and citations to the record are directed at challenging the

evidentiary support (or lack thereof) for the ALJ's decision.

The Court finds no error under *Chenery.*  The ALJ's decision is sufficiently specific to

allow this Court to perform its judicial review function.  In assessing plaintiff's RFC, the ALJ's

decision sets forth in detail his consideration of plaintiff's allegations of pain and limitations,

limited attention span, and short term memory loss; plaintiff's activities of daily living and social

functioning; the consistency of plaintiff's subjective allegations with the objective medical

6

evidence; and the opinion evidence from the state agency consultants and plaintiff's treating and examining physicians and psychologists. (Tr. 15-20). The undersigned is able to reasonably discern the evidentiary basis for the ALJ's decision to limit plaintiff to a range of medium work with certain non-exertional restrictions. *See Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (reviewing court on judicial review "may not supply a reasoned basis for the agency's action that the agency itself has not given," but may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (quoting, respectively, *Chenery*, 332 U.S. at 196; and *Bowman Transp. Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). Nevertheless, whether the ALJ's RFC and credibility determinations are supported by substantial evidence and whether the ALJ applied the correct legal standards in making these determinations will be discussed below in connection with assignments of error two and three.

The Seventh Circuit decision cited by plaintiff is distinguishable from the instant case in that the ALJs in *Parker* "failed to mention highly pertinent evidence [and/or] fail[ed] to build a logical bridge between the facts of the case and the outcome." *Id.* at 921. The administrative determinations in *Parker* were not overturned based solely on the use of boilerplate language, but also because the decisions were fundamentally flawed: one ALJ failed to properly consider the cumulative effects of plaintiff's impairments and the other completely ignored pertinent evidence contained in a treating physician's notes. *Id.* at 923-25. While both ALJ Rodner in the instant case and the ALJs in *Parker* used similar, boilerplate language, here the boilerplate language is accompanied by a detailed basis for the RFC determination and a narrative discussion of the medical and other evidence in support thereof in compliance with Social Security Ruling 96-8p.

7

There is a sufficient record upon which this Court can determine whether or not the ALJ's determination is supported by substantial evidence. As such, the Court turns to plaintiff's other assignments of error.

### 2. The ALJ's weighing of the medical opinions.

Plaintiff's second assignment of error asserts the ALJ erred in weighing the medical opinions of record and, as a result, the ALJ's conclusion about plaintiff's RFC is not supported by substantial evidence. Plaintiff contends the ALJ failed to give appropriate weight to the medical opinions of plaintiff's treating and examining physicians and instead improperly gave great weight to the opinions of the non-examining state agency physicians and psychologists who were without all the medical evidence of record.

In assessing plaintiff's RFC, the ALJ gave "great weight" to the opinions of Dr. Cho and Dr. Finnerty, the non-examining state agency consultants who reviewed the medical evidence of record in 2007, and "less weight" to the opinions of Dr. Kenford, the psychologist who examined plaintiff in April 2007, and Dr. Chiang, who examined plaintiff one time in September 2009. Plaintiff contends the ALJ erred by not giving any weight to the reports of Dr. Fallat or Dr. Anthony and by not affording more weight to the opinion of Dr. Chiang, all of whom plaintiff alleges are treating physicians.

The initial issues that must be addressed under this assignment of error are (1) whether Dr. Fallat, Dr. Anthony, and Dr. Chiang are treating physicians under the regulations whose opinions must be weighed in accordance with 20 C.F.R. § 416.927(c), and (2) whether these physicians actually gave opinions on the severity of plaintiff's impairments and on plaintiff's functional capacity. The applicable regulations set forth three types of acceptable medical

sources upon whom an ALJ may rely: treating source, nontreating source, and nonexamining source. 20 C.F.R. § 416.902. A treating source opinion on the nature and severity of a claimant's impairments is generally entitled to the most weight, and the Social Security Administration must give "good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). This "good reasons" requirement applies only to treating sources. *Smith,* 482 F.3d at 876. "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)[3]) (internal citations omitted). The ALJ must consider the following factors in determining how much weight to afford a nontreating source opinion: the length and nature of the treatment relationship, the evidence that the physician offered in support of his opinion, the consistency of the opinion with the record as a whole, and whether the physician was practicing a specialty. *See* 20 C.F.R. § 416.927(c); *Ealy*, 594 F.3d at 514.

Plaintiff argues that under *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980), Drs. Chiang, Fallat and Anthony qualify as treating physicians because they were "consulted for purposes of treatment. . . ." *Id.* at 145. Plaintiff acknowledges that these doctors may not be considered

---

[3]20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and 416.927(d) and are now found at §§ 404.1527(c) and 416.927(c)

treating physicians under "current law," but argues they qualify under the language of *Allen*.  The language quoted by plaintiff in *Allen* states in full:

> In determining the question of substantiality of evidence, the reports of physicians who have treated a patient over a period of time *or who are consulted for purposes of treatment* are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim.

*Allen*, 613 F.2d at 145 (citations omitted) (emphasis added).  However, the Court in *Allen* did not address the question of who qualifies as a treating physician, but instead addressed as a general proposition the weight to be afforded such opinions.  The language cited by plaintiff is dicta and is not controlling on who qualifies as a "treating" physician.

In contrast, the Sixth Circuit in *Smith v. Commissioner of Social Sec.*, 482 F.3d 873 (6th Cir. 2007), held that a physician who examined the plaintiff only once and who completed a physical capacities evaluation did not "evince the type of ongoing treatment relationship contemplated by the plain text of the regulation." *Id.* at 876 (referencing 20 C.F.R. § 404.1502). The Court of Appeals noted that the Social Security regulations explicitly define a treating source as follows:  "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.' 20 C.F.R. § 404.1502.[4]  A physician seen infrequently can be a treating

---

[4]The SSI regulation governing treating physicians, which is identical to Section 404.1502, states in relevant part:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.  Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).  We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).  We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your

source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition.' *Id.*" *Smith*, 482 F.3d at 876.  Therefore, the Court examines the treatment relationship between plaintiff and Drs. Chiang, Fallat, and Anthony in accordance with *Smith*.

### A. Dr. Chiang

Dr. Chiang evaluated plaintiff on September 25, 2009.  Dr. Chiang opined that plaintiff had moderate limitations in understanding, remembering and carrying out simple instructions; marked limitations in making judgments on simple work-related instructions; and marked limitations in regards to complex instructions or decisions.  (Tr. 632).  Dr. Chiang also opined that plaintiff had mild limitations interacting with the public and responding to changes in work routine, but marked limitations in his ability to interact with co-workers or supervisors.  (Tr. 633).  Dr. Chiang stated that plaintiff's impairments were not due to active substance abuse, but they were exacerbated when he uses alcohol.  (Tr. 633).

The ALJ determined that Dr. Chiang was not a treating physician because she examined plaintiff on only one occasion before completing a mental residual functional capacity assessment in September 2009.  While Dr. Chiang opined that plaintiff's "current impairments were not due to active polysubstance abuse or alcohol use" (Tr. 20, citing Tr. 633), the ALJ noted that Dr. Chiang's September 25, 2009 progress note (Tr. 636-37) failed to reflect whether Dr. Chiang even asked plaintiff about his current or past substance abuse.  (Tr. 20).  The ALJ therefore gave reduced weight to Dr. Chiang's opinion.

---

medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.  In such a case, we will consider the acceptable medical source to be a nontreating source.

20 CFR § 416.902.

Plaintiff argues that Dr. Chiang's opinion should have been evaluated as that of a treating physician and given "greater consideration" than the RFC opinions of the non-examining state agency psychologist as a matter of law. (Doc. 11 at 14, 17).

The ALJ reasonably determined that Dr. Chiang was not a treating physician under the Social Security regulations and case law. Like the physician in *Smith*, Dr. Chiang examined plaintiff only once before giving an RFC assessment. Dr. Chiang's single evaluation and RFC opinion do not demonstrate the type of ongoing treatment relationship the Social Security regulations envision for treating-physician status. *Smith*, 482 F.3d at 876. The ALJ's factual finding that Dr. Chiang is not a treating physician is supported by substantial evidence and must be accepted by this Court. *Id.* As a result, the ALJ was not required to give greater weight to Dr. Chiang's opinion or "good reasons" under *Wilson* for rejecting a treating physician's opinion. *Id.* ("In the absence of treating-source status for these doctors, we do not reach the question of whether the ALJ violated *Wilson* by failing to give reasons for not accepting their reports."). Nevertheless, the ALJ did give a valid reason for rejecting Dr. Chiang's opinion, noting there is no indication from Dr. Chiang's single treatment note that she questioned plaintiff about his substance abuse, an issue that permeated the treatment notes and examination findings of record. Plaintiff has not addressed the ALJ's reasons for giving reduced weight to Dr. Chiang's opinion and appears to rely solely on the regulations requiring, in general, that the opinions of examining physicians be given more weight than those of nonexamining physicians. Plaintiff has not directed the Court's attention to any regulatory factors or evidence suggesting that Dr. Chiang's opinion was entitled to greater weight than that given by the ALJ. The Court finds no error in the weighing of this opinion evidence.

**B. Dr. Fallat**

Dr. Fallat, a psychologist at CORE Behavioral, submitted a report in November 2007 (Tr. 427-430), stating he first saw plaintiff in November 2006.  However, Dr. Fallat did not comment on the frequency of their sessions.  (Tr. 428).  Dr. Fallat stated that plaintiff's appearance was good, his flow of conversation and speech at a was moderate to rapid pace, but he was articulate and educated.  (Tr. 428).  His affect was described as pleasant, cooperative, and deliberate; and his mood was described as irritable but otherwise normal with mood shifts that were said to be deliberate.  (Tr. 428).  Plaintiff complained of difficulty with concentration and short and long-term memory.  (Tr. 428).  Dr. Fallat reported no audio or visual hallucinations, paranoia, or delusions.  Plaintiff's fund of information and range of intelligence were above average.  His insight and judgment were poor, he was known to use alcohol, and he last tested positive for cocaine four months prior.  (Tr. 428).  Plaintiff's diagnoses included major depression disorder, recurrent, moderate, duration unknown, and polysubstance dependence, duration unknown.  (Tr. 429; *see also* Tr. 19).  He received medication and case management services, but his prognosis was not reported.  (Tr. 429).  In response to "medical source statement"[5] questions regarding plaintiff's ability to perform work activities from a mental standpoint, Dr. Fallat stated that plaintiff understands directions and can repeat them back, but he does not follow directions well.  (Tr. 429).  Dr. Fallat reported that plaintiff's concentration was poor during interviews and that it was "not entirely known" whether plaintiff could sustain concentration, persist at tasks, and

---

[5]*See* Social Security Ruling 96-5p, 1996 WL 374183, at *4 (July 2, 1996)("Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis.") (footnote omitted).

complete them in a timely manner, although Dr. Fallat suspected "there would be poor response." (Tr. 429). In terms of plaintiff's social interaction, Dr. Fallat opined that plaintiff tends towards manipulation and has difficulty with rules and procedures. (Tr. 429). In terms of plaintiff's reaction to the pressures of work involving simple, routine, or repetitive tasks, Dr. Fallat reported that plaintiff "becomes easily bored." (Tr. 429).

Plaintiff contends that the ALJ did not mention the report of Dr. Fallat, "who was plaintiff's treating psychiatrist at CORE Behavioral from 11/21/06 to 11/27/07 and who, from counsel's perspective, described and (sic) individual in his Medical Source Statement who exhibited characteristics which would preclude work activity." (Doc. 11 at 16; *see also* Doc. 11 at 12).

Contrary to plaintiff's argument, the ALJ did discuss Dr. Fallat's report in his decision and characterized Dr. Fallat as plaintiff's treating psychologist. (Tr. 18-19). Although the ALJ did not give any weight to Dr. Fallat's Medical Source Statement, any failure in this regard is harmless error. The Medical Source Statement by Dr. Fallat does not describe clearly definable functional restrictions from plaintiff's mental impairments. (Tr. 429). Moreover, there is nothing in the record to establish that plaintiff would be unable to perform work-related activities from a mental standpoint if Dr. Fallat's opinion was accepted. At the administrative hearing, the vocational expert was asked one question about Dr. Fallat's opinion regarding plaintiff's poor insight, judgment and concentration. However, the vocational expert never testified about the implications of Dr. Fallat's opinion on plaintiff's ability to perform work activities because counsel never responded to the vocational expert's query on the meaning of the term "poor" used by Dr. Fallat. (Tr. 77). Plaintiff points to no evidence indicating Dr. Fallat's Medical Source

14

Statement, if accepted, would result in a finding of disability, and counsel's impression of the evidence cannot suffice. Additionally, there are no supporting clinical or progress notes from CORE Behavioral to support Dr. Fallat's opinion. The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 416.927(c); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). The absence of such records from Dr. Fallat would justify giving less weight to his opinion. In addition, it does not appear that Dr. Fallat had an ongoing treatment relationship with plaintiff. Dr. Fallat's report indicates only that plaintiff was seen on November 21, 2006, and not "through" November 2007 as plaintiff's argument suggests. (Tr. 428). Notably, the record shows that for at least part of that time, plaintiff was incarcerated and therefore not receiving treatment at CORE (Tr. 651-Jan. 2007, Tr. 654-April 2007) and there are no treatment notes from CORE to support a finding of an ongoing treatment relationship such that Dr. Fallat would have a deeper insight into plaintiff's limitations. For these reasons, the undersigned finds that Dr. Fallat's opinion was so patently deficient that the ALJ's failure to consider it under 20 C.F.R. § 416.927(c) is harmless error. *See Wilson,* 378 F.3d at 547; *Smith-Marker v. Astrue*, 839 F. Supp.2d 974, 982 (S.D. Ohio 2012).

### C. Dr. Anthony

Plaintiff also argues that the ALJ erred by not giving "good reasons" for discounting the opinion of Dr. Anthony, Psy.D., a psychologist at Centerpoint Health, who completed a diagnostic assessment form in September 2009 and assigned a GAF of 48.[6] (Doc. 11 at 16; Tr.

---

[6]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of

616-623).

On September 15, 2009, Dr. Anthony interviewed plaintiff and gave the following

assessment summary:

> MHAP DAF [Diagnostic Assessment Form] 2006 describes client as "drifting
> off," losing concentration on the conversation, flat effect, depressed, irritable,
> sleep disturbance, low energy, shakes his leg constantly during the interview.  Has
> hope and is future oriented, but moderate risk for violence.  CURRENT
> ASSESSMENT: little of that has changed.  Cl who reports chronic pain and
> mobility issues since injury in 1999.  However, he gets Worker's Comp for this
> and there are secondary gain issues.  He says he has a hearing next week re:
> disability issues.  In session, I dropped my pen and he immediately bent over in
> chair and picked it up from floor.  This would ordinarily be a difficult move for
> someone with degenerated discs and he showed no difficulty.  Client reports
> depression, loneliness, fearfulness, hopelessness, poor sleep, poor appetite,
> irritability, crying spells, lack of libido.  He describes explosive rage episodes in
> which he says he is in a blacked out stage, doesn't remember what he did.
> Describes himself as "living like a hermit;" says he can't relate to people, has no
> real friends.  Only people he connects with at all are his family.  Also describes sx
> of ADHD.  Says he has always been like that and says his son and dtr have both
> been dx'd with ADHD.  Describes himself as disorganized, forgetful, constantly
> losing things, impulsive, but denies any manic episodes.  Long hx of various
> addictions, denies any current substance abuse.

(Tr. 623).

Plaintiff argues that Dr. Anthony is a treating psychologist whose opinion is entitled to

greater weight than the non-examining psychologist upon whom the ALJ relied for his RFC

determination.  Yet, like Dr. Chiang, there is no evidence that Dr. Anthony ever treated or

evaluated plaintiff on more than a single occasion or had an ongoing treatment relationship so as

to qualify as a treating physician.  *Smith*, 482 F.3d at 876.  In addition, Dr. Anthony did not give

any opinion on plaintiff's functional abilities relating to his mental ability to perform work.  As

---

severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with
clear expectation of death).  *Id.* at 34.  The DSM-IV categorizes individuals with scores of 41 to 50 as having
"serious" symptoms.  *Id.* at 32.

such, the ALJ was under no duty to assign any weight to Dr. Anthony's diagnostic assessment or to give reasons for not accepting her report. *See Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007).

In any event, the ALJ reasonably noted Dr. Anthony's findings that undermine plaintiff's argument that he suffers from disabling mental impairments. (Tr. 19). Dr. Anthony reported that plaintiff had an "extensive addiction history," more so than was previously reported in the 2006 diagnostic assessment, and while plaintiff reported only occasional tobacco, alcohol, and marijuana usage at his interview, Dr. Anthony suspected "some minimizing going on" given plaintiff's "different stories [at] different times" regarding his substance abuse history. (Tr. 616). After plaintiff reported his history and current use of alcohol and various substances, Dr. Anthony wrote, "Given his extensive history of addiction and the inconsistencies in his reporting," plaintiff's reporting of minimal use now "seems a little questionable." (Tr. 616-617). Dr. Anthony also noted the secondary gain issues associated with plaintiff's behavior during the evaluation in light of his upcoming disability hearing. She noted that while plaintiff complained of pain and restrictions, plaintiff immediately bent over in the chair and picked up a pen she had dropped on the floor, which Dr. Anthony stated "would be a difficult move for someone with degenerated discs and he showed no difficulty." (Tr. 623). As Dr. Anthony did not provide any medical opinion as to plaintiff's RFC or limitations on work activities, but in large part reiterated the symptoms reported by plaintiff, the ALJ did not err in evaluating Dr. Anthony's opinion.

To the extent plaintiff also argues the ALJ erred by not giving any weight to the GAF of 48 assigned by Dr. Anthony, which indicates "serious" symptoms, the Court finds no error in this regard. The Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct

17

correlation to the severity requirements of the mental disorders listings.'" *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart*, 133 F. App'x 684, 691-92 n. 5 (11th Cir. 2005)) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). *See also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ( "[A]ccording to the [Diagnostic and Statistical Manual's] explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning. . . . [W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Where, as here, other substantial evidence supports the ALJ's conclusion, the Court may not reverse the ALJ's decision even where the GAF score was 48. *Kornecky*, 167 F. App'x at 511.

### D. Dr. Finnerty

The ALJ's assessment of state agency psychologist, Dr. Finnerty, and adoption of the restrictions imposed by Dr. Finnerty in crafting plaintiff's RFC are supported by substantial evidence. Dr. Finnerty opined that plaintiff had moderate restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate limitations in maintaining concentration, persistence or pace; and no episodes of decompensation. (Tr. 411). The ALJ adopted these restrictions and gave plaintiff a limited RFC for work not requiring public interaction or superficial interaction with co-workers and supervisors; limited to simple, routine, and repetitive tasks; and not requiring a constantly rapid pace. (Tr. 15, 20). These limitations are consistent with Dr. Finnerty's conclusions that plaintiff "had difficulty relating with others"; that plaintiff's "memory and concentration are adequate for simple, repetitive tasks"; and that plaintiff "would not be able to tolerate a stressful work environment." (Tr. 417).

While the functional limitations imposed by Dr. Finnerty conflicted, in part, with those of

Dr. Chiang and Dr. Kenford, the consultative examiner, it is the ALJ's duty to resolve conflicts in the medical evidence. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec. of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). Here, the ALJ was faced with conflicting evidence on plaintiff's ability to perform work activities from a mental standpoint. As outlined above, the ALJ's resolution of this conflict was done in accordance with agency regulations and controlling law and is supported by substantial evidence. Aside from plaintiff's general arguments that the opinions of his "treating" physicians were entitled to more weight, plaintiff has failed to direct the Court's attention to any objective or clinical evidence suggesting that he was more limited than opined by Dr. Finnerty. As there is substantial evidence supporting the ALJ's resolution of the conflicting medical opinions and for the RFC assessment, plaintiff's second assignment of error should be overruled.

### 3. The ALJ did not err in discounting plaintiff's credibility.

Plaintiff contends the ALJ's credibility analysis did not follow the requirements of SSR 96-7p[7] and that the ALJ erred by focusing on the inconsistencies between plaintiff's testimony

---

[7]Social Security Ruling 96-7p and 20 C.F.R. § 416.929(c)(3) describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c); SSR 96-7p.

19

and written reports on his ability to perform daily activities and on his social functioning. (Doc. 11 at 10-11, 18-19). Plaintiff asserts that the ALJ's credibility determination is not supported by substantial evidence and should be reversed.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the ALJ's opportunity to observe the individual's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of HHS*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers*, 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.*

Substantial evidence supports the ALJ's determination that plaintiff's subjective statements regarding the severity of his mental impairments are not fully credible. The ALJ noted numerous inconsistencies between plaintiff's statements at the administrative hearing and the two adult function reports submitted by plaintiff to the Social Security Administration in

20

February 2007 and September 2007. (Tr. 16-17). For example, the ALJ noted that in the
February report, plaintiff described no problems taking care of his personal needs or needing
reminders to care for his personal needs, while in the September report he claimed to need help
in both areas. (Tr. 16, 262, 292). Plaintiff made different representations about his ability to
prepare his own meals and shop for food in both reports as well as in his hearing testimony. (Tr.
16, 63, 262-63, 292-93). While plaintiff reported in February he was able to sweep and do light
cleaning, he reported in September that his "attention span was lacking for household tasks."
(Tr. 16, 263, 293). Plaintiff reported he was able to pay bills, handle a savings account, and use
a check book or obtain money orders in February, but in September he stated he did not "feel
responsible enough to manage money" because of his short attention span and forgetfulness. (Tr.
17, 264, 294). Similarly, the ALJ identified several inconsistencies between the two function
reports in terms of plaintiff's social functioning (Tr. 17, comparing social activities in Tr. 264
with Tr. 294) and inconsistencies in plaintiff's statements to his medical providers about his drug
use. (Tr. 19, 616-17). The ALJ concluded that plaintiff's credibility was poor because there was
no substantial evidence showing a deterioration in his physical or mental conditions to explain
the differences in his functioning in February 2007 and September 2007. (Tr. 17).

Plaintiff argues the ALJ made an unwarranted assumption that only changes in his
physical or mental conditions may justify the different functional limitations reported by plaintiff
and that the seven-month time span between the two reports was in itself enough to justify the
differences. Plaintiff also posits that he had no "significant social life" and therefore the ALJ's
conclusions about his social functioning were unwarranted.

Although plaintiff has presented plausible, alternative explanations for several of the
reasons given by the ALJ for his credibility finding, even if substantial evidence would support

21

the opposite conclusion, the Court must uphold the ALJ's credibility decision where, as here, it is

supported by substantial evidence. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). The ALJ

reasonably considered the inconsistencies in plaintiff's various reports in assessing plaintiff's

credibility. *See Rogers*, 486 F.3d at 248 ("Consistency between a claimant's symptom

complaints and the other evidence in the record tends to support the credibility of the claimant,

while inconsistency, although not necessarily defeating, should have the opposite effect."). The

ALJ also considered plaintiff's allegations along with the objective medical evidence and

determined they were not consistent. (Tr. 18-20). The ALJ's decision reflects that he properly

considered the required factors in determining plaintiff's credibility and reasonably concluded

that plaintiff was not credible. *See* 20 C.F.R. § 416.929(c). In light of the evidence considered

by the ALJ, the inconsistencies between plaintiff's statements and testimony and the other

evidence of record, and the deference due to the ALJ in making credibility determinations, the

undersigned concludes the ALJ's credibility finding is supported by substantial evidence and

should be affirmed.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the

docket of the Court.

Date: 2/19/13

Karen L. Litkovitz
United States Magistrate Judge

22

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JEFFERY L. HACKLE,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-145
Beckwith, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

23