**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Jeffery L. Hackle,                              )
                                                )
                 Plaintiff,         ) Case No. 1:12-CV-145
                                                )
        vs.                                      )
                                                )
Carolyn Colvin, Acting                   )
Commissioner of Social Security,   )
                                                )
                 Defendant.        )

O R D E R

This matter is before the Court on Magistrate Judge Litkovitz's Report and

Recommendation of February 19, 2013 (Doc. No. 15) and Plaintiff Jeffery L. Hackle's

objections to the Report and Recommendation. Doc. No. 26.  In her Report and

Recommendation, Judge Litkovitz concluded that the Administrative Law Judge's

("ALJ") determination that Plaintiff is not disabled under the Social Security regulations

was supported by substantial evidence.  Judge Litkovitz, therefore, recommended that

the ALJ's decision be affirmed and this case be closed on the docket of the Court.  For

the reasons that follow, Plaintiff's objections to the Report and Recommendation are not

well-taken and are **OVERRULED.**  The Court **ADOPTS** the Report and

Recommendation.  The decision of the ALJ is **AFFIRMED**.

I. Background

Plaintiff Jeffery L. Hackle filed an application for Supplemental Security Income

based on impairments of a spinal injury, shoulder and pectoral sprain, lung nodule, pain,

anxiety, depression, and limited attention span.  Following an evidentiary hearing, the

ALJ determined that Plaintiff has the physical residual functional capacity ("RFC") to

perform a limited range of medium work and the mental RFC to perform simple, routine, repetitive tasks with no public interaction and only superficial interaction with supervisors and co-workers. Additionally, the ALJ found that Plaintiff would be limited to performing non-stressful jobs that avoid a constantly rapid pace. Based on this overall RFC, and relying on the vocational expert's testimony, the ALJ concluded that Plaintiff is not disabled under the Social Security Regulations because there are a significant number of jobs in the national economy that he can perform, including cleaner, warehouse worker, and hand packer. AR21.

In arriving at Plaintiff's RFC, the ALJ relied on the opinions of two state consulting sources, Dr. Todd Finnerty, a psychologist, and Dr. Myong Cho, a medical doctor. At issue in this appeal, and in Plaintiff's objections to the Report and Recommendation, are: 1) the weight, or lack thereof, the ALJ assigned to the opinions of three mental health care providers whom Plaintiff alleges were treating physicians; 2) relatedly, the ALJ's alleged failure to develop the record by obtaining treatment notes from these mental health care providers; and 3) the ALJ's evaluation of Plaintiff's credibility. As did Magistrate Judge Litkovitz, the Court discuss the medical evidence only as needed to resolve these issues.

## A. The Weight of Medical Source Evidence

Three pieces of medical source evidence are at issue in this case: a Mental Status Questionnaire completed by Dr. Fallat of Core Behavioral Centers in November 2007 (AR427-AR430), a Diagnostic Assessment Form completed by Dr. Kate Anthony of Centerpoint Health in September 2009 (AR616-AR623), and a Medical Source Statement Of Ability To Do Work-Related Activities (Mental) submitted by Dr. Miecheng

2

Chiang of Centerpoint Health in September 2009.  AR632-AR634.  It appears that Plaintiff sought mental health treatment from Core/Centerpoint sporadically.  In an issue the Court will take up in more detail below, however, the record does not include any office treatment notes or other evidence from Plaintiff's visits to Core/Centerpoint.

Dr. Fallat's questionnaire, completed on November 27, 2007, indicates that he first saw Plaintiff on November 21, 2006 but it does not provide a date that he last saw Plaintiff.  AR428.  Dr. Fallat noted that Plaintiff appeared clean and neatly dressed.  His speech was moderately rapid, articulate, and educated with occasional lapses into cultural phrases and tones.  Dr. Fallat found that Plaintiff's affect was pleasant and cooperative with irritable mood shifts he felt were deliberate.  Plaintiff appeared complaining of difficulty concentrating, problems staying awake, and difficulty with short-term and long-term memory but with no hallucinations, paranoia or delusions.  Plaintiff was oriented as to person, place, time, and situation.  Dr. Fallat found that Plaintiff had an above average fund of information and range of intelligence, poor concentration, and above average memory.  Dr. Fallat stated that Plaintiff's insight and judgment are poor and, in this record, noted that Plaintiff was known to use alcohol and tested positive for cocaine in June 2007.  AR429.

Dr. Fallat then noted dates of treatment of "11/21/06-present."  Dr. Fallat diagnosed Plaintiff with major depressive disorder and polysubstance abuse with unknown dates of duration.  Dr. Fallat opined that Plaintiff can understand directions and repeat them back, but does not follow them well.  Dr. Fallat stated that Plaintiff's concentration was poor during the interview.  Dr. Fallat could not provide an opinion as to whether Plaintiff can sustain concentration and persistence at tasks and complete

them in a timely fashion but "supect[ed] there would be poor response."  Regarding social interaction and adaptation, Dr. Fallat stated that Plaintiff "tends toward manipulation" and "has difficult time w/rules and procedures."  Finally, regarding Plaintiff's toleration for work pressure involving simple, routine, and repetitive tasks, Dr. Fallat stated that Plaintiff "becomes easily bored."  AR429.

In his written decision denying Plaintiff's claim for benefits, the ALJ characterized Dr. Fallat as Plaintiff's treating psychologist and summarized his report to the Social Security Administration, but did not ascribe any particular weight to it.  AR18-AR19.  In her Report and Recommendation, Magistrate Judge Litkovitz determined that the ALJ's failure to discuss the weight he gave to Dr. Fallat's report was harmless error since, in her opinion, it was patently deficient.  Doc. No. 15, at 15.

In September 2009, Plaintiff presented to Centerpoint for mental health treatment.  Dr. Kate Anthony, a psychologist, completed a Diagnostic Assessment Form.  After gathering details from Plaintiff on his personal history, she noted that he "is a less than reliable reporter with difficulty with dates and numbers and inconsistencies in his stories."  AR621.  Dr. Anthony observed that Plaintiff was unkempt, with poor hygiene, that he was restless and that his speech was mildly pressured.  She found his affect to be congruent and his mood depressed.   Plaintiff, however was fully oriented, with fair recent memory and fair remote memory, although he had some difficulty with dates and times.  Dr. Anthony found Plaintiff to be of above average intelligence, with adequate insight, but impaired judgment.  AR622.   Dr. Anthony diagnosed Plaintiff with major depressive disorder, attention-deficit/hyperactivity disorder, and personality disorder not otherwise specified.  Dr. Anthony assigned Plaintiff a current Global

4

Assessment of Functioning ("GAF") score of 48, which was also his highest GAF in the past year.[1]  Dr. Anthony summarized that little had changed for Plaintiff since a 2006 Diagnostic Assessment Form was apparently completed.  AR623.  She noted Plaintiff's reports of chronic pain and mobility issues, but commented that he has secondary gain issues relative to that and observed further that Plaintiff had no difficulty bending over and picking up her pen when she dropped it.  Dr. Anthony noted finally that Plaintiff needed his medications to be re-evaluated and that he could benefit from psychotherapy.  AR623.

The ALJ summarized Dr. Anthony's diagnostic assessment of Plaintiff but, as was the case with Dr. Fallat's report, did not ascribe any particular weight to it.  In her Report and Recommendation, Magistrate Judge Litkovitz determined that Dr. Anthony was not a treating physician and, because she did not give any opinion as to PLaintiff's mental ability to perform work, the ALJ was not required to assign any weight to it or give reasons for not accepting her report.  Doc. No. 15, at 17.

Dr. Chiang completed a "Medical Source Statement of Ability To Do Work Related Activities (Mental)" in September 2009.  Dr. Chiang indicated that Plaintiff is moderately impaired in his abilities to understand, remember, and carry out simple instructions.  She indicated that Plaintiff is markedly impaired in his abilities to understand, remember and carry out complex instructions, and as is his ability to make

---

[1]     A GAF of 48 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Kornecky v. Commissioner of Social Sec., 167 Fed. Appx. 496, 503 (6th Cir. 2006).

judgments on complex work-related decisions. AR632.  In her written comments, Dr.

Chiang stated:

> Client has difficulty remembering and needs frequent reminders for appointments
> with doctor and case manager.  Client has demonstrated diminished judgement
> [sic] making skills as evidenced by frequent legal problems.  Client also has poor
> impulse control and becomes overwhelmed with complex situations and
> problems.

AR. 632.

Dr. Chiang next indicated that Plaintiff is mildly impaired in his ability to interact

with the general public and markedly impaired in his abilities to interact appropriately

with supervisors and co-workers.  Dr. Chiang then indicated that Plaintiff is mildly

impaired in his ability to respond appropriately to work situations and changes in a

routine work setting.  In her comments, Dr. Chiang stated:

> Client becomes easily agitated and irritable especially with authority figures.
> Client has episodes of outbursts when angered or irritated.  Client becomes
> argumentative and irrational when irritated.  Client has history of assault charges
> due to conflicts with others.

AR633.  Dr. Chiang also stated that Plaintiff's concentration and focus are affected by

his impairments.  In the section asking the physician to identify the factors, e.g., medical

signs, laboratory findings or other factors, supporting her assessment, Dr. Chiang

wrote:

> Client has difficulty following through with tasks without being prompted.  Client is
> easily distracted and does poorly when concentration is needed for extended
> periods of time.

AR633.  Finally, Dr. Chiang indicated that Plaintiff's impairments are not due to active

alcohol or substance use, but they are exacerbated by his use of alcohol.  Id.

6

During the evidentiary hearing, the vocational expert testified that if the ALJ accepted Dr. Chiang's assessment of Plaintiff's mental RFC, he would be precluded from performing any jobs.  AR73.  In his decision, however, the ALJ gave Dr. Chiang's opinion "reduced weight."  The ALJ provided two reasons for this decision.  First, the ALJ concluded that Dr. Chiang was not a treating physician because only one treatment session with Plaintiff was documented.  Second, the ALJ rejected Dr. Chiang's conclusion that Plaintiff's mental impairments were not caused by alcohol or substance abuse because there was no documentation that Dr. Chiang ever asked Plaintiff about current or past substance abuse.  AR20.  In her Report and Recommendation, Magistrate Judge Litkovitz found that the ALJ's determination that Dr. Chiang was not a treating physician was supported by substantial evidence because her single evaluation of Plaintiff was not the type of ongoing treatment relationship contemplated by the Social Security regulations to confer treating physician status.  Additionally, Judge Litkovitz stated, even if Dr. Chiang was a treating physician, her failure to document questioning Plaintiff about his substance abuse problems provided a legitimate basis to give her opinion reduced weight.  Doc. No. 15, at 12.

In June 2007, Dr. Finnerty, a psychologist who reviewed Plaintiff's records for the Social Security Administration, completed a mental RFC which indicated that Plaintiff has no significant limitations or is only moderately impaired in all areas.  AR415-AR418.  In July 2007, Dr. Cho, a medical doctor, provided a physical RFC which indicated that Plaintiff can perform work at the medium level of exertion and is only restricted in climbing and stooping.  AR419-AR426.  The ALJ gave "great weight" to both of these opinions.  AR20.  As is particularly relevant here, the ALJ concluded that Dr. Finnerty

7

reviewed the medical evidence, including Plaintiff's allegations, and that his opinion was generally consistent with the medical evidence of record.  AR20.  In her Report and Recommendation, Magistrate Judge Litkovitz concluded that the weight the ALJ gave to Dr. Finnerty's report was supported by substantial evidence because it was his duty to resolve conflicts in the medical evidence and that he had done so in accordance with agency rules and regulations.  Judge Litkovitz noted also that Plaintiff had failed to point to any objective or clinical evidence indicating that he is more limited than Dr. Finnerty concluded.  Doc. No. 15, at 12.

B. <u>Development of the Record</u>

The ALJ's decision notes on several occasions the lack of documentation in the record.  For example, although Dr. Fallat indicated that Plaintiff complained of impaired concentration and short term memory, there was no evidence that his concentration or memory were ever formally tested.  AR18.  Additionally, the ALJ noted that Plaintiff only had one documented visit with Dr. Chiang and that there were no treatment notes accompanying or supporting her mental RFC assessment.  AR20.  Plaintiff's appeal and objections to the Report and Recommendation suggest that the ALJ failed in his duty to develop the medical record.

The ALJ held two evidentiary hearings in this case.  During the first hearing, on May 28, 2009, Plaintiff was not represented by counsel.  The ALJ advised Plaintiff of his right to be represented by counsel and asked Plaintiff whether he wanted to be represented by an attorney or whether he wished to "talk about his file that day."  AR32. The ALJ also advised Plaintiff that they could review his case that day but that Plaintiff could obtain an attorney to represent him at the next hearing, which he anticipated to be

8

in about three months.  The ALJ, however, cautioned Plaintiff not to wait until the week before the hearing to retain counsel because "then the attorney will come in and say that he or she did not have time to familiarize themselves with the case[.]" AR33.  Additionally, the ALJ specifically told Plaintiff that he would need to see his treatment notes and psychiatric records from Centerpoint Health.  AR34-35.  The ALJ again advised Plaintiff as to his right to attorney representation and again cautioned him to not delay in retaining counsel or submitting his medical records.  AR39.

The ALJ held a second evidentiary hearing on October 13, 2009.  Despite the ALJ's prior admonitions to Plaintiff not to delay retaining counsel, the transcript indicates that he did not secure attorney representation until the week before the hearing.  AR44.  Additionally, the ALJ told Plaintiff and his counsel three times that he needed to review Dr. Chiang's treatment notes and left the record open for 30 days for them to be submitted.  AR58, AR80-81.

### C. Plaintiff's Credibility

Plaintiff testified about the effects of his impairments on his activities of daily living and social interaction.  The ALJ found, however, that there were numerous inconsistencies in statements Plaintiff made in two adult function reports, which he completed in February 2007 and September 2007, and his testimony during the evidentiary hearing in October 2010, that could not be accounted for by a substantial deterioration in his physical or mental condition.  AR16-17.  The ALJ concluded that these inconsistencies reduced Plaintiff's credibility as to the intensity, persistence, and limiting effects of his impairments.  AR15-17.  In this appeal and in his objections to the Report and Recommendation, Plaintiff complains that the ALJ's adverse credibility

9

determination was not supported by substantial evidence because the ALJ failed to confront him with the prior inconsistent statements during the evidentiary hearing and afford him an opportunity to explain them.

## II. Standard of Review

The relevant statute provides the standard of review to be applied by this Court in reviewing decisions by the ALJ.  See 42 U.S.C. § 405(g).  The Court is to determine only whether the record as a whole contains substantial evidence to support the ALJ's decision.  "Substantial evidence means more than a mere scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion."  LeMaster v. Secretary of Health & Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted).  The evidence must do more than create a suspicion of the existence of the fact to be established.  Id.  Rather, the evidence must be enough to withstand, if it were a trial to a jury, a motion for a directed verdict when the conclusion sought to be drawn from it is one of fact for the jury.  Id.  If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence.  Elkins v. Secretary of Health & Human Serv., 658 F.2d 437, 439 (6th Cir. 1981).  The district court reviews de novo a magistrate judge's report and recommendation regarding social security benefits claims.  Ivy v. Secretary of Health &  Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

## III. Analysis

### A. Treating Physician Rule

10

Plaintiff first contends that the ALJ erred in not assigning greater weight to the opinions of Drs. Fallat, Anthony, and Chiang as his treating physicians. The Court finds that Magistrate Judge's Litkovitz's analysis of this assignment of error was correct.

Under the "treating physician rule," the opinion of a claimant's treating physician is accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[.]" Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242 (6th Cir. 2007). If the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. Id. There is a rebuttable presumption that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding. Id. (citing Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.")). Additionally, the ALJ must provide "good reasons" for discounting a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. Id.

As Magistrate Judge Litkovitz noted, Dr. Anthony was not a treating psychologist because she apparently only saw Plaintiff once, Kornecky v. Commissioner of Social Sec., 167 Fed. Appx. 496, 506 (6th Cir. 2006), and, moreover, the Diagnostic

11

Assessment Form she completed gave no opinion as to the effect of Plaintiff's mental impairments on his ability to work, a point which Plaintiff concedes in his objections. Doc. No. 16, at 11.  Consequently, the ALJ was not required to give controlling weight to Dr. Anthony's report or to provide good reasons for rejecting it.  Bass v. McMahon, 499 F.3d 506, 510 (6th Cir. 2007).

As indicated, the ALJ characterized Dr. Fallat as Plaintiff's treating psychologist and summarized his report, but did not state what weight, if any, he gave to it. Magistrate Judge Litkovitz concluded that Dr. Fallat was not a treating psychologist because he apparently only saw Plaintiff once.  Judge Litkovitz concluded further that assuming Dr. Fallat was a treating psychologist, the ALJ's failure to give his opinion any weight was a harmless error because it was patently deficient.

Despite the ALJ's characterization of Dr. Fallat, Judge Litkovitz was accurate in questioning whether he in fact qualifies as Plaintiff's treating psychologist under the Social Security regulations.  The absence of a note indicating a "date last seen" in Dr. Fallat's report suggests only a single treatment visit with Plaintiff and no other office notes were included in the record despite his statement that the treatment dates were from November 2006 to November 2007.  Additionally, as Judge Litkovitz observed, Plaintiff was incarcerated for at least part of the time Dr. Fallat supposedly provided ongoing treatment to him.  Doc. No. 15, at 12.

In any event, assuming for present purposes that the ALJ's characterization is binding and that Dr. Fallat, therefore, was a treating psychologist, the Court agrees with Judge Litkovitz that the ALJ's failure to state the weight he gave to Dr. Fallat's report was a harmless error.  As Judge Litkovitz stated, Dr. Fallat's opinion was not supported

12

by any treatment notes or other medically-accepted clinical or diagnostic techniques.

Dr. Fallat's opinions are conclusory, equivocal in some areas, for instance, regarding

Plaintiff's ability to concentrate,[2] and do not cite any examples or observations to

support his clinical judgments. Therefore, Dr. Fallat's opinion was so patently deficient

that the ALJ could not possibly credit it. Accordingly, the ALJ's failure to specifically

specify the weight he gave to Dr. Fallat's report was harmless error. Cole v. Astrue, 661

F.3d 931, 940 (6th Cir. 2011).

Substantial evidence supported the ALJ's conclusion that Dr. Chiang was not a

treating physician. The record indicates that the only occasion Dr. Chiang saw Plaintiff

was on the date she authored her opinion. Thus, similar to Dr. Anthony, one treatment

session with Plaintiff is insufficient to confer treating physician status. This is true, even

if, as Plaintiff contends, he established an ongoing treatment relationship with Dr.

Chiang thereafter, a proposition which frankly is not supported by the record either.[3]

See Kornecky, 167 Fed. Appx. at 506 ("[T]he relevant inquiry is not whether Lian might

---

[2]     Dr. Fallat stated that Plaintiff's ability to concentrate was "not entirely known" but that he "suspect[ed] there would be poor response[.]" AR429.

[3]     Plaintiff points to a letter that Dr. Chiang wrote in January 2011 indicating that she recently examined him as evidence of an ongoing treatment relationship with Dr. Chiang. AR680. This letter, however, does not help Plaintiff for at least two reasons. First, the letter was authored and submitted after the ALJ issued his adverse decision and, therefore, was not available for him to consider. Consequently, the letter does nothing to undermine the ALJ's conclusion that Dr. Chiang was not a treating physician at the time she submitted her functional capacity evaluation. Second, the letter actually strengthens the ALJ's conclusion that Dr. Chiang was not a treating physician. Dr. Chiang states in her letter that she would like Plaintiff "to resume outpatient therapy as part of his treatment." Id. This statement indicates that whatever treatment relationship she had with Plaintiff had terminated, or, in other words, was not ongoing at the time she wrote the letter.

have become a treating physician in the future if Kornecky had visited him again.  The

question is whether Lian had the ongoing relationship with Kornecky to qualify as a

treating physician <u>at the time he rendered his opinion</u>.") (emphasis in original).

Additionally, the ALJ did not err in discounting Dr. Chiang's opinion because it was not

supported by any office or treatment notes.   <u>Blakley v. Commissioner of Social Sec.</u>,

581 F.3d 399, 406 (6th Cir. 2009) ("It is an error to give an opinion controlling weight

simply because it is the opinion of a treating source if it is not well-supported by

medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent

the with other substantial evidence in the case record.")(citing Soc. Sec. Rul. 96–2p,

1996 WL 374188, at *2 (July 2, 1996) (internal brackets omitted).

     Plaintiff generally complains that the ALJ preferred the opinions of consultative

examiners over medical sources who had actually examined him.  "In appropriate

circumstances, opinions from State agency medical consultants may be entitled to

greater weight than the opinions of treating or examining sources." <u>Blakely</u>, 581 F.3d at

509 (citing Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996) (internal ellipses

omitted).  "One such circumstance may occur, for example, when the 'State agency

medical consultant's opinion is based on a review of a complete case record that

provides more detailed and comprehensive information than what was available to the

individual's treating source.'" <u>Id.</u> (internal ellipses omitted).

     Regarding his physical RFC, although Plaintiff criticizes Dr. Cho's report on the

grounds that it was based on an incomplete record, he has not pointed to any evidence

which contradicts his opinion that Plaintiff has the RFC to perform a limited range of

medium work.  Moreover, Dr. Cho's opinion is supported by the report of the state

14

examining physician, Dr. Bailey, who characterized her examination of Plaintiff as unremarkable and opined that he could do a moderate amount of work pushing, pulling, lifting and carrying heavy objects.  AR435.  Dr. Cho's RFC is also consistent with a 2003 discharge summary from an industrial rehabilitation center, Sports Therapy, Inc., which indicated that Plaintiff can lift 20 pounds frequently, 45 pounds occasionally, occasionally push or pull 70 pounds, and frequently push or pull 35 pounds.  AR355.  This report also recommended that he focus job search opportunities in the light-medium range of exertion.  AR355.  In January 2007, Plaintiff's treating chiropractor reported that treatments reduced his pain to a tolerable level and allowed him to perform routine activities of daily living, including working.  AR392.  Thus, the ALJ's decision to give Dr. Cho's report great weight was supported by substantial evidence.

Regarding his mental RFC, although Drs. Anthony, Fallat, and Chiang are considered examining sources, their opinions are unsupported by contemporaneous treatment notes or reports of diagnostic testing.  Moreover, Plaintiff's seeking of treatment from these sources seems to coincide with a need to develop supporting evidence for his disability claim.  Dr. Anthony, for instance, noted secondary gain issues in her assessment, AR623, and Plaintiff sought treatment from Dr. Chiang only about three weeks before his second evidentiary hearing before the ALJ.  Plaintiff's secondary gain issues undermine the reliability of the opinions offered by these examining sources.

Although it antedates the reports of Drs. Anthony, Fallat, and Chiang, as the ALJ found and as the Commissioner illustrates throughout her opposition to Plaintiff's statement of specific errors (Doc. No. 14), Dr. Finnerty's opinion and RFC is generally consistent with the overall record.  For instance, a psychiatric intake assessment from

15

the Hamilton County Justice Center in October 2008 indicates that Plaintiff's thought processes were organized, his concentration appeared normal, and his memory was intact.  AR598.  A mental health evaluation from the Correctional Reception Center in August 2005 described Plaintiff's mental status examination as unremarkable and the evaluator noted that Plaintiff seemed to embellish his symptoms.  AR639-AR640.  A progress note from December 2005 described Plaintiff's mood as euthymic, or normal, and indicated that his judgment was fair.  AR649.  Follow-up assessments of Plaintiff's mental status were much the same.  AR650-AR655.  As the ALJ observed in his decision, when Plaintiff is incarcerated and compliant with medications, mentally he is quite stable.  AR20.  An intake assessment from CORE in September 2006 stated that Plaintiff had fair judgment, average intelligence and impulsivity and that his memory was intact.  AR630.  Dr. Anthony found that Plaintiff had fair memory and insight.  AR622.  While the ALJ gave less weight to the opinion of Dr. Kenford, a state agency examining psychologist, he credited her findings that Plaintiff is only moderately impaired in his abilities to attend, concentrate, and persist and that his ability to perform simple tasks was intact.  AR18, AR387.  Dr. Kenford also found that Plaintiff's ability to withstand everyday work pressures was moderately to markedly impaired.  Id.  Dr. Chiang stated that Plaintiff is only moderately impaired in his abilities to remember and carry out simple instructions, interact appropriately with the public, and respond appropriately to changes in the work setting.  AR632-AR633.  Plaintiff's difficulties in social interaction appear to be largely self-reported and it appears that his legal problems were caused by his failure to pay child support, as opposed to engaging in a pattern of anti-social behavior.  See AR18.  As the ALJ noted, in February 2007, Plaintiff reported being able

16

to visit with others and to get along politely with authority figures, e.g., police, bosses, and landlords, and stated further that he had never been fired or laid off from a job due to problems getting along with other people.  AR264, AR265, AR266.  Dr. Finnerty's RFC, however, accommodates Plaintiff's alleged difficulties in social interaction by limiting him to jobs with only superficial contact with supervisors and co-workers.

In a supplemental filing, Plaintiff argues that the ALJ's decision to accept the opinions of the state consulting physicians over those of his treating physician's runs afoul of a recent opinion issued by the Sixth Circuit in Gayheart v. Commissioner of Social Sec., ___F.3d___, No. 12-3553,  2013 WL 896255 (6th Cir. Mar. 13, 2013).  In Gayheart, the Court held in relevant part that in evaluating medical source evidence and opinions, the ALJ commits reversible error by subjecting the opinions of the claimant's treating physicians to closer scrutiny than the opinions of the state agency physicians.  In that  case, the Court observed, the ALJ rejected the opinions of the plaintiff's treating physicians for alleged internal inconsistencies and for being inconsistent with the record as a whole while at the same time accepting the opinions of the state agency physicians that suffered from the same flaws.  Id. at *13-*14.

The Court concludes, however, that Gayheart does not apply in this case because the record does not reflect that the ALJ scrutinized the opinions of Plaintiff's treating psychologists more closely than the opinions of the state agency consultants or applied double standards in his evaluation of the medical evidence.  First, the record indicates that except for his prison psychologist, whose evidence is not at issue here, Plaintiff arguably had no treating psychologist.  Second, as previously stated, Dr. Anthony provided no opinions on the effects, if any, of his mental impairments on his

17

ability to work. Therefore, the ALJ was not required to address her opinion or given any reasons for rejecting it. Similarly, Dr. Fallat's report was cursory, equivocal in part, and not supported by treatment notes or specific examples which supported his clinical conclusions. Third, Dr. Chiang's opinions were not supported by any treatment notes or reports of diagnostic techniques - a legitimate basis for the ALJ to reject or assign little weight to her opinions. See Smith v. Commissioner of Social Sec., 482 F.3d 873, 876-77 (6th Cir. 2007). In fact, however, some of the limitations indicated by Dr. Chiang were incorporated into the ALJ's mental RFC, such as limiting Plaintiff to jobs with simple instructions and little or no interaction with the public. See AR632-AR633.

It is true, as Plaintiff points out, that Dr. Finnerty's RFC appears to be based solely on Dr. Kenford's report of her consultative examination of Plaintiff with some discounting some of her findings. But the ALJ's giving great weight to Dr. Finnerty's RFC even though it was based on Dr. Kenford's report is not the same thing as employing double standards to evaluate the medical evidence. The fact of the matter is that because there was no medical source with a longitudinal picture of Plaintiff's mental health, each psychological medical source opinion was necessarily based on a limited amount of evidence. Under the circumstances, therefore, it was reasonable for both Dr. Finnerty and the ALJ to reject or discount some of Dr. Kenford's more extreme findings, such as her conclusion that Plaintiff's current GAF was 20, indicating extreme psychological impairment. Moreover, as explained above, the ALJ's determination that Dr. Finnerty's report is consistent with the overall record was supported by substantial evidence. Consequently, the Court does not find that the ALJ's evaluation of the medical evidence is contrary to Gayheart.

18

In summary, the evidence regarding Plaintiff's psychological impairments was inconsistent, and as the Magistrate Judge observed, it was the ALJ's duty and province to resolve the conflicts in the evidence. As the Court's review of the record above indicates, Dr. Finnerty's mental RFC, in which he limited Plaintiff to jobs performing simple, repetitive tasks, with only limited or superficial contact with others, is generally supported by the overall record. Consequently, the ALJ did not err in adopting Dr. Finnerty's RFC in evaluating Plaintiff's disability claim.

B. <u>Failure to Develop the Record</u>

Plaintiff next contends that the ALJ failed in his duty to develop the record by not obtaining the medical records from his examining psychological sources. He contends apparently that it was unfair for the ALJ to discount the opinions of Drs. Anthony, Fallat, and Chiang because they were not supported by treatment notes or other medical evidence while at the same time failing to request those records from the doctors. This argument is without merit.

The ALJ does not have a heightened duty to develop the record where, as in this case, the claimant was represented by counsel. <u>Trandafir v. Commissioner of Social Sec.</u>, 58 Fed. Appx. 113, 115 (6th Cir. 2003). Rather, it is the claimant's burden to prove the existence of a disability, <u>Moon v. Sullivan</u>, 923 F.2d 1175, 1181 (6th Cir. 1990), and accompanying that burden is the duty to produce the medical evidence necessary to substantiate his claim:

> In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are disabled, its effect on your ability to work on a

19

sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512(a) ; see also Perschka v. Commissioner of Social Sec., 411 Fed. Appx. 781, 786 (6th Cir. 2010) (stating that the claimant "must provide competent evidence to authenticate a medical or psychological condition that prevented her from engaging in gainful work activity").

In this case, the ALJ explicitly cautioned Plaintiff not to delay in retaining counsel to represent him.  Moreover, the ALJ told Plaintiff at least three times, and his counsel twice, that he needed to review the medical records of his treating sources.  The ALJ left the record open for a sufficient time for Plaintiff and/or his counsel to submit the records needed to support his claim.  Consequently, any failure to adequately develop the record lies with them and not with the ALJ.

Accordingly, this objection is not well-taken and is **OVERRULED.**

### C.  Evaluating Plaintiff's Credibility

Finally, citing Federal Rule of Evidence 613, Plaintiff argues that the ALJ unfairly discounted his credibility based on his inconsistent statements about the effect of his impairments on his activities and his ability to work by not confronting him about those inconsistencies when he testified during the evidentiary hearing and giving him an opportunity to explain the statements.

It is for the ALJ, not the reviewing court, to make credibility findings. Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994).  The ALJ's credibility determinations are given great weight and deference by the reviewing court.  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997).  The ALJ, however, is not required to

20

give a claimant the opportunity to explain his prior inconsistent statements because the Federal Rules of Evidence do not apply in Social Security hearings.  <u>Schuler v. Commissioner of Social Sec.</u>, 109 Fed. Appx. 97, 102 (6th Cir. 2004).  Morever, inconsistencies in the claimant's report of his activities without evidence of an accompanying deterioration in condition, such as those identified by the ALJ, provide sufficient evidence to discount the claimant's credibility.  <u>See</u> SSR 96-7p ("The adjudicator must also look at statements the individual made to SSA at each prior step of the administrative review process and in connection with any concurrent claim or, when available, prior claims for disability benefits under titles II and XVI . . . . Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, <u>the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects.</u>") (emphasis added).

In this case, contrary to Plaintiff's position, the ALJ was not required to give him an opportunity to explain his prior inconsistent statements.  Additionally, the ALJ set forth in great detail the numerous inconsistent statements Plaintiff made about the effect of his impairments on his daily activities and his ability to perform work. The ALJ observed further that there was no apparent deterioration in Plaintiff's condition that would explain the inconsistencies.  Consequently, the ALJ's adverse credibility determination was supported by substantial evidence.

This objection, therefore, is not well-taken and is **OVERRULED.**

<u>Conclusion</u>

For the reasons set forth above, Plaintiff's objections to Magistrate Judge Litkovitz's Report and Recommendation are not well-taken and are **OVERRULED.**  The Court **ADOPTS** the Report and Recommendation.  The decision of the ALJ finding that Plaintiff is not disabled under the Social Security regulations is **AFFIRMED**.  This case is closed.


**IT IS SO ORDERED**


Date April 8, 2012                                    s/Sandra S. Beckwith
                                                                Sandra S. Beckwith
                                                Senior United States District Judge